South Pittsburgh Savings & Loan Association, Petitioner v. Commonwealth of Pennsylvania, Department of Banking, Respondent.

Argued November 2, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS and BLATT.

*Stephen W. Graffam,* with him *Grogan, Graffam, McGinley & Solomon,* for petitioner.

*Melvin R. Shuster,* with him *Bonnie Jean McRobbie,* Assistant Attorney General, *John E. Nanorta,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

*William H. Markus,* with him *Edmond B. Smith, Jr.,* and *Markus, Riethmuller & Smith,* for intervening respondent.

OPINION BY JUDGE CRUMLISH, JR., February 16, 1978:

This appeal by South Pittsburgh Savings and Loan Association (South Pittsburgh) is from a decision and order of the Department of Banking (Department) approving the application of Concord-Liberty Savings and Loan Association (Concord) for a letter of authority to establish a branch office within Cat-

taneo's Shop 'N' Save Supermarket in Donaldson Crossroads, Washington County. The Department's action was taken pursuant to Section 404 of the Savings Association Code of 1967 (Code), Act of December 14, 1967, P.L. 746, *as amended*, 7 P.S. §6020-54.

In January, 1974, South Pittsburgh, which to that time had no branch office in the Donaldson Crossroads area, sought approval from the Department to open a branch office there. The department approved an application for a branch on the site adjacent to the Cattaneo Supermarket, but that plan was thwarted by zoning difficulties. South Pittsburgh then sought and received approval for a branch office located 600 feet, or two blocks, from the supermarket. That office was opened on February 28, 1975, and has been in operation ever since.

Subsequently, in the fall of 1975, South Pittsburgh contacted the Department concerning the opening of an "in-store" branch within the supermarket. However, the association's officials, who had exchanged written and telephonic communications with the Assistant Director of the Department's Savings Association Bureau, never culminated their discussions by the submission of a formal application. On February 24, 1976, Concord applied for a letter of authority for an in-store branch at Cattaneo's. Following South Pittsburgh's objection to the application, a hearing was held before a Department hearing examiner on July 19, 1976. On November 4, 1976, the Department issued its decision approving Concord's application; this appeal followed.

South Pittsburgh argues that Concord failed to show need within the subject primary service area for this particular branch office and, hence, that approval by the Department was erroneous. It further contends that the Department abused its discretion in

approving Concord's application for a branch at the very location where it had allegedly discouraged South Pittsburgh's application for a branch. The latter contention is based upon the Assistant Director's October 8, 1976 letter to South Pittsburgh's president wherein he stated, "we seriously question the advisability of establishing a branch within a food market which is located no more than 600 feet from your McMurray Office since it would seem to us that the customers of the food market are already being served by your present branch."

The standard to be applied by the Department in passing upon applications for branch offices is set forth in Section 404(c) of the Code, 7 P.S. §6020-54-(c), which states, in pertinent part:

> the department shall ... approve the application if it finds that there is a need for services or facilities such as are contemplated by the establishment of the proposed branch ... , but shall otherwise disapprove the application. ...

In *First National Bank of Pike County v. Department of Banking,* 7 Pa. Commonwealth Ct. 603, 608, 300 A.2d 823, 826 (1973), we held, in construing Section 905(c) of the Banking Code of 1965, Act of November 30, 1965, P.L. 847, *as amended,* 7 P.S. §905(c), which is identical to Section 404(c) of the Code, that

> [t]he term, 'services or facilities,' is broadly inclusive and embraces everything, both tangible and intangible, that will be made available by the bank proposing to establish the branch in order to supply the needs of the community for banking services.

We have also consistently recognized the superior expertise of the Department of Banking in analyzing the "tangibles and intangibles" which are involved in the "need" formula. *Farmers Bank of Kutztown v. De-*

*partment of Banking,* 17 Pa. Commonwealth Ct. 454, 333 A.2d 253 (1975). Our role in appeals of this nature is to determine whether there is substantial evidence of record to support the determinations of the Department. *Farmers Bank, supra,* 17 Pa. Commonwealth Ct. at 457, 333 A.2d at 255. We have reviewed the transcript of the hearing, as well as the many exhibits presented by both associations, and conclude that the evidence amply supports the Department's conclusion that a need existed in the community for the services which the proposed branch would provide.

Nor do we believe the Department acted improperly in approving Concord's application after it had informally indicated that it would not be inclined to approve an application by South Pittsburgh for a branch at the same site. As the Department stated in a letter to South Pittsburgh, a mere informal request or inquiry to the Department regarding establishment of a branch does not in any way preempt a location; rather, the association which files the first complete, formal application will receive first consideration.

Furthermore, South Pittsburgh cannot claim that the Department's letter of October 8 caused it to delay in filing a formal application and hence prejudiced its position. While the letter indicated that the Department "seriously questioned" South Pittsburgh's proposal, it also outlined its generally favorable policy toward in-store branches, set forth briefly the procedure for application for in-store branch approval, and invited South Pittsburgh to file a formal application if it desired to do so. Even assuming *arguendo* that the letter was a rejection of an "application" for the in-store branch, it does not follow that the Department abused its discretion when it then approved Concord's application. One of the

most important considerations in determining need in the branch banking area is the effect of the proposed branch on competition. *Farmers Bank of Kutztown, supra.* Where, as here, the first applicant for a branch location already has an office in the immediate vicinity (here, South Pittsburgh already had a branch in Donaldson Crossroads, 600 feet from the supermarket), and the second applicant does not, and where, as here, both applicants have a substantial number of customers to service in that area, the Department would be within the bounds of its discretion in approving the newcomer's application, even if it had previously rejected the application of the established association, on the basis of the stimulating effect the newcomer's entry into the market would have on competition.

Accordingly, we

### ORDER

AND Now, this 16th day of February, 1978, the decision of the Department of Banking is affirmed.